UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No.

| | |
|---|---|
| STEVEN R. WILLIAMSON and ALVIS G. SPEIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>GERALD BAKER, SHERIFF OF WAKE COUNTY, in his official capacity,<br><br>Defendant. | **COMPLAINT** |

NOW COMES PLAINTIFFS Steven R. Williamson and Alvis G. Speight, though undersigned counsel, and allege of the Defendant in this Complaint as follows:

## INTRODUCTION

1. Plaintiffs Steven R. Williamson and Alvis G. Speight were unlawfully discharged by Defendant Gerald Baker from their positions as Master Deputy Sheriffs with the Wake County Sheriff's Office ("WCSO") on or about 21 December 2018. The discharge of Plaintiffs was unlawful because it was done in retaliation for each Plaintiff's voluntary reporting to superiors in the WCSO of inappropriate homophobic and racially discriminatory comments made during a training session in May 2017 at the WCSO by Teddy Patrick, a subordinate deputy sheriff who is a close personal friend and ally of Defendant Baker, that led to Patrick's demotion at the WCSO in August 2017. Plaintiffs engaged in conduct protected by federal law in their voluntary reporting of Patrick's discriminatory conduct that resulted in

Patrick's demotion. Defendant Baker's termination of Plaintiffs in retaliation for Plaintiffs' protected conduct is in violation of federal law, and this action is filed to rectify this violation of law and to recover the damages resulting therefrom.

## PARTIES

2. Plaintiff Steven R. Williamson (hereinafter "Williamson") is a citizen and resident of Wake County, North Carolina.

3. Plaintiff Alvis G. Speight (hereinafter "Speight") is a citizen and resident of Wake County, North Carolina.

4. Defendant Gerald Baker (hereinafter "Defendant" or "Baker") is the Sheriff of Wake County, and is a citizen and resident of Wake County, North Carolina. Baker was elected to this office in the November 2018 election, and took office on 3 December 2018.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 1343, as this action is authorized under Title VII of the Civil Rights Act.

6. This Court has venue over this action because the unlawful personnel actions and employment practices at issue were committed in Wake County, North Carolina, within the Eastern District of North Carolina ("EDNC"), the relevant employment records are maintained and administered in this judicial district, and Plaintiffs did work and would have continued to work in this judicial district but for Defendant's unlawful employment practices.

2

# EXHAUSTION OF ADMINSTRATIVE REMEDIES

7. Plaintiffs each timely filed a Charge of Discrimination with the EEOC on 5 February 2019 alleging that each of them was discharged in retaliation for conduct protected by Title VII. A right to sue letter was issued to each Plaintiff via email on 7 January 2021.

# FACTUAL ALLEGATIONS

8. Williamson began his law enforcement career as a Deputy Sheriff with the WCSO in 2000. In December 2018, Williamson held the position of Master Deputy Sheriff and worked with civil executions. Williamson consistently received high performance reviews in his work at the WCSO.

9. Speight began his law enforcement career as a Deputy Sheriff with the WCSO in 2001. In December 2018, Speight held the position of Master Deputy Sheriff and worked with civil executions. Speight consistently received high performance reviews in his work at the WCSO.

10. Baker worked as a deputy sheriff with the WCSO in various low-level roles from approximately 1990 until he retired in Spring 2017. At or before that time, Baker decided to run against Sheriff Donnie Harrison in the November 2018 election for the position of Sheriff of Wake County, and Baker did in fact ultimately file for and run against Sheriff Harrison in the November 2018 election.

11. Baker won the November 2018 election for the office of Sheriff of Wake County, and took office on 3 December 2018.

12. Teddy Patrick is a deputy sheriff with the WCSO who, upon information and belief, began work with the WCSO in approximately 2000. Patrick resigned and/or retired from the WCSO in 2021.

13. In 2017, Patrick held the rank of Lieutenant at the WCSO. In that role, Patrick held training sessions at the WCSO on various subjects for other deputies.

14. In or about May 2017, Patrick held an in-service training session for deputy sheriffs at the WCSO. This in-service training session was attended by approximately 44 deputies, including Speight and Williamson.

15. During that in-service training session, Patrick made several homophobic and discriminatory statements about homosexual persons. Patrick, among other statements, told the deputies present that he "didn't believe in being gay," did not like "gay people," and made statements that were derogatory toward homosexuals. Patrick specifically identified one of the deputies present at the training sessions as being "gay", and stated words to the effect of that if a man came to his home dressed as a woman, he would not permit that man to enter his home. The deputy identified by Patrick as being "gay" shall be referred to herein by his initials, D.S.

16. In addition, during this in-service training session, Patrick (who is African-American) made several comments that were racially inappropriate and discriminatory in nature. Upon information and belief, Patrick stated words to the effect of "if white people keep killing themselves, we black people will be the

majority, instead of the minority." Patrick also made statements about his being uneasy boarding airplanes where Muslims males were present.

17. The homophobic and racial comments made by Patrick at the in-service training session made numerous deputies present uncomfortable. The deputies present for Patrick's comments found the comments to be unprofessional and inappropriate for an in-service training session at the WCSO.

18. After the May 2017 in-service training session at the WCSO, Speight and Williamson discussed Patrick's inappropriate statements, and heard from other deputies of other inappropriate comments similarly discriminatory and improper in nature made by Patrick in an earlier and different in-service training session. Speight and Williamson discussed the matter, and decided that they would voluntarily report Patrick's conduct to their superiors. Speight and Williamson decided to do so because they believed that Patrick's conduct was unlawful, discriminatory, and improper for the workplace.

19. Shortly thereafter, Speight voluntarily reported to Richard Sampson, a captain in Speight's chain of command, the discriminatory conduct of Patrick set out herein. Sampson took in this information, but did not indicate he would do anything with the information.

20. Approximately two weeks the May 2017 training session, and after they had decided to voluntarily report Patrick's discriminatory conduct, Speight and Williamson ran into Richard Johnson, then chief of operations at WCSO, at the WCSO facility. Speight and Williamson at that time voluntarily reported Patrick's

discriminatory conduct and statements to Chief Johnson. Chief Johnson informed them that he would look into the matter.

21. Shortly thereafter, Williamson arrived at the WCSO facility one morning at the same time as Sheriff Donnie Harrison. Sheriff Harrison and Williamson walked into Harrison's office, and in doing so walked past a common area where Teddy Patrick was sitting with other WCSO employees. Patrick was in a position to see Williamson go into Harrison's office. Once in Harrison's office, Harrison asked Williamson what he had heard about an incident at an in-service training session. Williamson then voluntarily reported Patrick's discriminatory conduct to Sheriff Harrison. Upon hearing Williamson's account, Sheriff Harrison informed Williamson that there would be an internal investigation of Patrick's conduct, and ordered Williamson to write a statement for that investigation.

22. An internal investigation was then conducted of Patrick's discriminatory conduct. During the internal affairs investigation, the majority of the deputies present for Patrick's conduct during the in-service training session were interviewed and required to cooperate with the investigation as a condition of their employment. Upon information and belief, these deputies all confirmed the conduct of Patrick that had been voluntarily reported by Plaintiffs to their superiors, as set out herein.

23. When voluntarily reporting Patrick's discriminatory conduct to their superiors, Plaintiffs each advocated their personal belief that Patrick had engaged in unlawful discrimination through Patrick's conduct described herein.

24. After completion of the internal affairs investigation, Sheriff Harrison, in consultation with Chief Johnson and others, decided that Patrick would be demoted from the position of Lieutenant. Ultimately, Patrick was demoted to the position of Senior Investigator. This demotion resulted in a loss of pay and a complete removal of supervisory authority from Patrick.

25. Chief Johnson personally informed Patrick of this demotion in August 2017.

26. Patrick filed a complaint with the EEOC challenging his demotion in the fall of 2017. The WCSO responded to the complaint and explained the basis for Patrick's demotion. The EEOC found no merit in Patrick's complaint regarding his demotion, and dismissed the complaint.

27. While the internal affairs investigation of Patrick was proceeding in summer 2017, Patrick, upon information and belief, was conferring with and advising Baker regarding Baker's plan to run for the office of Sheriff against Sheriff Harrison in the November 2018 election.

28. Baker and Patrick have long been close friends and confidants. When Baker was a deputy sheriff, Baker was directly supervised by Patrick when Baker was working in the judicial services branch of the WCSO. Upon information and belief, Patrick and Baker frequently ate lunch and socialized together. In addition, upon information and belief, Baker and Patrick are members of the same Masonic Lodge, and socialize together in that context.

29. Baker and Patrick often travel together. On at least three occasions during 2017 and 2018, Baker, Patrick, and other WCSO deputies went on trips to the Dominican Republic together. Upon information and belief, Patrick and Baker discussed Baker's campaign against Sheriff Harrison, and Patrick's demotion by Sheriff Harrison and Plaintiff, during these trips.

30. Upon information and belief, during the travel referenced herein, Baker and Patrick engaged in recreational and other activities that only the closest of friends and confidants would share.

31. At various times after August 2017, Patrick would "vent" to Baker about his demotion.

32. After Baker won the November 2018 election against Sheriff Harrison, Baker named a "transition team" of approximately five (5) persons to advise him regarding his transition to the office of Sheriff. Baker named Patrick to the transition team. Upon information and belief, as a member of the transition team, Patrick was involved in discussions with Baker and other members of the transition team regarding personnel decisions to be made when Baker took office in early December 2018.

33. Upon taking office as Sheriff on 3 December 2018, Baker promoted Patrick from the position of Senior Investigator to the position of Captain, and then promoted Patrick again shortly thereafter to the position of Major -- which had the effect of making Patrick the "second in command" at the WCSO.

34. Just prior to Baker taking office on 3 December 2018, Baker instructed a close colleague to inform Chief Richard Johnson that Baker would not permit Johnson to be re-sworn as a deputy under his command. This decision by Baker had the effect of terminating Johnson, because Johnson could not continue his employment with the WCSO without being sworn in under the new sheriff. Upon taking office as Sheriff on 3 December 2018, Baker in fact did refuse to permit Johnson to be sworn in as a deputy under Baker, thereby terminating Johnson.

35. Of the more than 1000 sworn officers at the WCSO at the time of Baker's taking office, only Johnson and one other sworn deputy (Sam Lapsley) were not permitted by Baker to be sworn in. Johnson had been the Chief of Operations who had personally informed Patrick that Patrick was being demoted, and had personally advocated for Patrick to be disciplined. Lapsley, upon information and belief, had been involved in a conversation with Patrick and other deputies at a WCSO facility in 2017 or 2018, wherein Lapsley had expressed to Patrick his disapproval of Patrick's activities while Patrick was traveling with Baker and others to the Dominican Republic.

36. After Baker took office on 3 December 2018, Speight and Williamson continued their work at WCSO, and had no performance issues.

37. On 21 December 2018, just four days before Christmas and without warning, Baker summoned Speight and Williamson to his office, and terminated the employment of each at WCSO. Baker provided no reason to Speight or Williamson, other than that their "services were no longer needed."

9

38. Speight and Williamson were the first deputies discharged by Baker after he took office on 3 December 2018, and, upon information and belief, the only deputies discharged by Baker in December 2018.

39. Baker terminated Speight and Williamson from their employment with the WCSO in retaliation for the role of each in voluntarily reporting Patrick's homophobic and racially discriminatory comments during the May 2017 training session that led to Patrick's demotion and loss of pay.

40. Several statements made by persons close to Baker confirm this fact. In August 2017, Teddy Patrick told D.S., the deputy Patrick specifically identified as being "gay" during the May 2017 in-service training session, that Patrick had "discovered the three deputies that complained on me." The only three deputies that adverse employment action was taken against by Baker in December 2018 and who were involved in voluntarily reporting Patrick's discriminatory conduct in 2017 were Speight, Williamson, and Chief Johnson.

41. Shortly after Speight and Williamson were terminated on 21 December 2018, Speight spoke with Barry Jones, who at that time was a Sergeant in the WCSO under Baker. Jones told Speight that "Williamson was collateral damage."

42. After the 2018 election, Sheriff Harrison had a conversation with Karen Wallace, another member of Baker's "transition team." Sheriff Harrison inquired of Wallace as to why there was hostility from Baker's camp toward Harrison and Chief Johnson. Wallace told Sheriff Harrison "you never should have demoted Teddy Patrick."

43. Likewise, after the 2018 election, upon information and belief Patrick had a conversation with D.S., the deputy Patrick specifically identified as being "gay" during the May 2017 in-service training session. Patrick told D.S. words to the effect of "You don't have anything to worry about, I know who was responsible."

44. In addition, after the 2018 election, a close personal friend of Karen Wallace told Speight that "Chief Richard Johnson had to go."

45. In addition, in December 2020, Williamson was approached by Terry Green, who was a major in the WCSO during Sheriff Harrison's term as sheriff, and continued in a supervisory role in the WCSO after Baker took office. Green told Williamson that "Baker is still doing stuff down there" and that "Haywood [another supervisory deputy] and I told Baker not to mess with you guys, but Richard Johnson had to go and should have had his bags packed."

**FIRST CLAIM FOR RELIEF**

Title VII -- Retaliation

46. The allegations of Paragraph 1 through 45 are realleged and incorporated as if fully set out herein.

47. Plaintiffs engaged in conduct that is and/or was reasonably believed to be protected conduct under Title VII of the Civil Rights Act, as outlined herein.

48. Plaintiffs reasonably believed they were opposing unlawful discrimination when each voluntarily reported Patrick's conduct to their superiors, and expressed their personal beliefs to their superiors that Patrick's conduct was discriminatory and illegal.

11

49. Plaintiffs were terminated by Baker in retaliation for Plaintiffs' protected conduct as outlined herein.

50. Plaintiffs' protected conduct as outlined herein was the but-for cause of the unlawful termination of each by Baker.

51. As a direct and proximate result of Baker's unlawful termination of Plaintiffs, each Plaintiff has suffered pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays of the Court as follows:

1. That judgment be entered against Defendant in favor of each Plaintiff for compensatory damages for his pecuniary losses in an amount to be proven at trial, including back pay and front pay with interest thereon, lost benefits, other privileges of employment, and other damages as permitted by law;

2. That judgment be entered against Defendant in favor of each Plaintiff for compensatory damages for his non-pecuniary losses in an amount to be proven at trial, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, damage to career and reputation, and other non-pecuniary losses as permitted by law;

3. That each Plaintiff's costs and expenses be taxed to Defendant as permitted by law;

4. That each Plaintiff recover his attorneys fees from Defendant as permitted by law;

5. That Plaintiffs have a trial by jury; and

6. For such other and further relief as the Court may deem just and proper.

This the 6th day of April, 2020.

**GAMMON, HOWARD & ZESZOTARSKI, PLLC**

/s/   Richard T. Gammon
Richard T. Gammon
N.C. State Bar No. 9807
rgammon@ghz-law.com


/s/   Joseph E. Zeszotarski, Jr.
Joseph E. Zeszotarski, Jr.
State Bar No. 21310
jzeszotarski@ghz-law.com

P.O. Box 1127
Raleigh, NC  27602
(919) 521-5878
Fax:  (919) 882-1898

Counsel for Plaintiffs